**UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
WESTERN DIVISION**

| | |
|---|---|
| RETSEL CORPORATION, d/b/a Grand Gateway Hotel and d/b/a Cheers Sports Lounge and Casino, CONNIE UHRE, and NICHOLAS UHRE,<br><br>Plaintiffs,<br><br>v.<br><br>NDN COLLECTIVE, SUNNY RED BEAR, NICK TILSEN, MARY BOWMAN, NICK COTTIER, ALBERTA EAGLE, BRE JACKSON, GEORGE BETTELYOUN, BOOKINGS HOLDINGS, INC., d/b/a Booking.com, EXPEDIA, INC., d/b/a Expedia.com, and THE RAPID CITY POLICE DEPARTMENT,<br><br>Defendants. | Case No. 5:24-cv-05070-LLP<br><br>**MEMORANDUM IN SUPPORT OF MOTION TO DISMISS BY DEFENDANTS NDN COLLECTIVE, SUNNY RED BEAR, NICK TILSEN, MARY BOWMN, NICK COTTIER, ALBERTA EAGLE, BRE JACKSON, and GEORGE BETTELYOUN** |

Plaintiffs Retsel Corporation, Connie Uhre, and Nicholas Uhre (collectively, "Retsel") could have and should have brought all related claims arising out of the events at the Grand Gateway in 2022 as counterclaims in the original NDN Collective lawsuit, Case No. 5:22-CV-05027-LLP (D.S.D.) (the "Original Suit"). Dissatisfied with their prospects and summary judgment losses in the Original Suit, Retsel chose to bring this New Suit where they assigned their claims new labels and leveled unfounded allegations contradicted by years of discovery and litigation. Retsel's intentional claim splitting wastes judicial resources and harasses NDN Collective, Sunny Red Bear, Nick Tilsen, Mary Bowman, Nick Cottier, Alberta Eagle, Bre Jackson, and George Bettelyoun

(collectively, the "Native American Defendants"). As a matter of equity and judicial administration, Retsel's claims against the Native American Defendants must be dismissed.

Retsel's claims also fail on the merits. The Complaint's group-pleading strategy fails to meaningfully distinguish between defendants. Setting that pleading deficiency aside, Retsel's Count I for tortious interference fails for the same reasons that same claim was dismissed—repeatedly—in the Original Suit; namely, that Retsel cannot identify a specific third party or establish a wrongful act of interference. Retsel's Count II for injurious falsehood fails because it involves a business—Gateway Autoplex—that Retsel does not own. Retsel's Count III for defamation is barred by the statute of limitations. Retsel's Count IV for forgery is not a civil cause of action in South Dakota. And Retsel's Count V for an alleged RICO violation falls woefully short of satisfying Rule 9(b) and does not allege facts to show wire fraud, extortion, or a pattern of racketeering activity, among other requirements.

The Court should dismiss this new lawsuit in its entirety, both because it is a brazen example of claim splitting and because the claims fail as a matter of law.

## FACTS

### I. Retsel's facts as alleged in the Complaint.

Retsel Corporation is a South Dakota corporation that does business as the Grand Gateway Hotel and Cheers Sports Lounge and Casino, located in Rapid City, South Dakota ("Grand Gateway"). (Complaint ¶¶ 5, 7.) Connie Uhre and Nick Uhre

either operate or did operate the Grand Gateway. (*Id.* ¶ 8.) Nick Uhre is a director of Retsel. (*Id.* ¶ 9.)

NDN Collective is a non-profit South Dakota corporation that benefits Native Americans. (*Id.* ¶¶ 10-11.) Defendants Red Bear, Tilsen, Bowman, Cottier, Eagle, and Jackson are Native American individuals who reside in Rapid City. (*Id.* ¶¶ 13-14, 16-19.) Tilsen is the president and CEO of NDN Collective. (*Id.* ¶ 15.)

George Bettelyoun is a Native American individual who lives in Coon Rapids, Minnesota. (*Id.* ¶ 20.)

Retsel also brings this Complaint against defendants Booking Holdings, Inc., Expedia, Inc., and the Rapid City Police Department. (*See id.* at page 1 and ¶¶ 123-130.)

In the summer of 2020, George Bettelyoun and his sister attempted to rent a room at the Grand Gateway, but Nick Uhre refused to rent them a room. (*Id.* ¶ 24.) After being denied a room, George Bettelyoun posted about the incident on Facebook. (*Id.* ¶ 25.) The post went viral and Nick Uhre alleges that he received harassing and threatening phone calls. (*Id.* ¶ 26.)

On March 19, 2020, Quincy Bear Robe shot and killed Myron Pourier at the Grand Gateway. (*Id.* ¶ 36.) The next day, Connie Uhre posted on Facebook that Native Americans would no longer be allowed to enter the Grand Gateway property. (*Id.* ¶ 37.) Around the same time, an email communication circulated among Rapid City hotel personnel. (*Id.* ¶ 39.) Hermus Bettelyoun—a non-party to this suit—shared part of this email thread on his Facebook page. (*Id.* ¶ 38.) Retsel believes that Hermus Bettelyoun "forged" part of the email thread to incorrectly attribute certain statements made by

Connie Uhre to Nick Uhre. (*Id.* ¶¶ 38-39.) Nick Uhre claims he began receiving "death threats" on March 21, 2022. (*Id.* ¶ 41.)

On March 21, 2022, Red Bear came to the hotel to "rent a [hotel] room." (*Id.* ¶ 42.) The next day, members of NDN Collective also attempted to rent rooms from the Grand Gateway. (*Id.* ¶¶ 44-45.) Red Bear and the NDN Collective members were denied service. Soon after, protests began at the Grand Gateway. (*Id.* ¶ 46.) The Native American Defendants filed a civil rights lawsuit against Retsel on March 23, 2022. (*Id.* ¶ 50.)

Red Bear learned in April 2022 that the Rapid City Marshalls football team was planning to stay at the Grand Gateway. (*Id.* ¶ 55.) Red Bear informed the team about recent actions by the Grand Gateway and Connie Uhre's statements and the team cancelled its reservation. (*See id.* ¶¶ 56-57.)

As a result, Retsel alleges that the Grand Gateway, Cheers, and "the entire Uhre family have been the victim of threats, vandalism, harassment, defamation, and more by the NDN Collective members for more than 3 years." (*Id.* ¶ 59.)

## II. Facts developed in the Original Suit flatly contradict many of the allegations in the Complaint.

Based on discovery in the Original Suit, Retsel and the Uhres know that many of the allegations in the Complaint are wrong—or they should have known they were wrong if they had engaged in the diligence and investigation required by Rule 11. In presenting this non-exhaustive list of the Complaint's factual misstatements, the Native American Defendants are not asking this Court to convert this motion into a motion for

summary judgment. Instead, the Native American Defendants raise this issue for the Court's consideration solely in connection with the equitable claim-splitting analysis discussed below.

Some of the allegations in the Complaint that are demonstrably wrong based on discovery in the Original Suit are:

| **Complaint allegation (paragraph)** | **Evidence it is untrue** |
|---|---|
| "On March 21, 2022, nearly immediately after [an email thread containing racist remarks by members of the Uhre family became public], the Board of Directors and Owners of Retsel Corporation issued a Statement of Apology." (¶ 40.) | The "apology" attached to the Complaint as Exhibit 3 was not made on March 21, 2022. It was a condition of the Consent Decree between Retsel and the Department of Justice and was published in late 2023. (*Compare* New Suit, Dkt. 1-3 *with United States v. Retsel Corp.*, Case No. 5:22-CV-05086-LLP (D.S.D.), Dkt. 59 ¶¶ 20-21 & Appendix A.) |
| "NDN repeatedly goes to larger commercial establishments, falsely accusing the businesses of being racist in order to extract financial settlements." (¶ 61.) This allegation is repeated, without further support, in paragraph 68. | The article cited in footnote 6 addresses a boycott of Target by conservative groups and contains no support for the allegations in ¶ 61 or ¶ 68. |
| "On July 24, 2024, the EEOC dismissed Ferguson's charges as he had no employment relationship with Retsel corporation [sic]. His charges were filed solely on the directive of NDN to defame the Retsel Corporation." (¶ 67.) Similar allegations are made in ¶¶ 73-75. | Brandon Ferguson is not an employee of NDN Collective. NDN Collective's website lists its employees.[1] Mr. Ferguson was, for at least a short period of time, the Tribal Liaison for Retsel, which was the basis of his dismissed EEOC claim. Mr. Ferguson was also living at the Foothills Inn, a property owned by Connie Uhre.[2] Based on those facts, Retsel knew or should have known that Mr. Ferguson did not file an EEOC complaint at NDN Collective's direction. |

[1] NDN Collective, Who We Are, Staff & Board, https://ndncollective.org/staff-and-board/ (last visited Jan. 25, 2025).
[2] *See Uhre v. Ferguson*, Case No. 51CIV24-000375, Pennington County, SD (Mar. 13, 2024) (Connie Uhre's eviction action against Brandon Ferguson).

| | |
|---|---|
| "Gateway lost 80% of its regular business after being removed from Expedia and Booking, which was a direct result of the intentional actions of NDN Collective members." (¶ 81.) | As to Expedia, Retsel's Exhibit 7 makes clear that Expedia "tried to contact Nick Uhre numerous times, but without any response, we had to temporarily deactivate your property from our site." (Compl. Ex. 7.) Retsel's removal from Expedia is not attributable to "intentional actions of NDN Collective members" as alleged in the Complaint. In fact, after Nick Uhre finally responded to Expedia, Expedia restored Retsel's access to its booking platform, which the Complaint omits entirely.<br><br>As to Booking.com, the only alleged connection to NDN Collective is the Complaint's allegation that NDN Collective directed Mr. Ferguson to file an EEOC charge, which is discussed above. |
| "Sunny Red Bear had posted that Gateway Autoplex, owned and operated by the Retsel Corporation, 'illegally [ran] her credit. This statement is completely false, malicious and was posted on Facebook to deter business away from Gateway Autoplex." (¶ 88.) | According to the South Dakota Secretary of State, Gateway Autoplex is a separate business and is not owned by Retsel.[3] Because Retsel is not affiliated with Gateway Autoplex, it has no factual basis to allege that Ms. Red Bear's statement is "completely false [or] malicious." |
| "Hermus Bettelyoun falsely claimed that a Sales Manager at Gateway Autoplex committed corrupt business practices and exhibited poor treatment to their customers. None of these claims have any merit, are completely false, and were posted to Facebook to intentionally deter business from Gateway Autoplex." (¶ 89.) | Because Retsel is not affiliated with Gateway Autoplex, it has no basis for alleging that Mr. Bettelyoun's statements are false.<br><br>The cited Exhibit 11, and the related Exhibit 9 that appears to be the same post but easier to read, do not contain claims by Mr. Bettelyoun about corrupt business |

[3] Declaration of Timothy W. Billion in Support of Motion to Dismiss by Defendants NDN Collective, Sunny Red Bear, Nick Tilsen, Mary Bowman, Nick Cottier, Alberta Eagle, Bre Jackson, and George Bettelyoun ("Billion Decl.") Ex. 1. As a public record, this information is both publicly accessible and subject to judicial notice. Fed. R. Evid. 201(b)(2). The Native American Defendants have attached a copy via a declaration for the Court's convenience.

| | |
|---|---|
| | practices. Instead, Mr. Bettelyoun responded to a post by someone else who alleged discrimination at Gateway Autoplex. Mr. Bettelyoun's post has nothing to do with the Grand Gateway Hotel, the Uhres, or Retsel. |
| Paragraphs 99-104 allege that Paul Braskey shared a copy of an email with Raynor Whitcombe, who shared it with Sunny Red Bear, who shared it with Hermus Bettelyoun. | Aderianna Young Bear was a recipient of the email in question and testified in her deposition in the Original Suit that she printed a copy of the email and handed it to Mr. Bettelyoun.[4] |
| Paragraphs 105-108 allege that Hermus Bettelyoun doctored Connie's email. | Aderianna Young Bear testified that the image Mr. Bettelyoun posted is exactly the image as she printed it and handed it to him.[5] |

The Complaint also contains repeated allegations that unidentified NDN Collective members committed various acts, such as vandalism, arson, and extortion. (*See, e.g.*, Complaint ¶ 59, 61, 112, 115, 116.) But Retsel admitted in discovery responses and sworn deposition testimony that they had no evidence who committed those acts, much less evidence tying them to NDN Collective. (Original Suit, Dkt. 160 ¶¶ 15, 74-76, 78.) The Court dismissed those claims from the Original Suit based on a lack of evidence connecting the alleged acts to NDN Collective. (Original Suit, Dkt. 212 at 35.)

## **LEGAL STANDARD**

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), each claim "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff

[4] Original Suit, Dkt. 161-21 at 10:8-13:25.
[5] Original Suit, Dkt. 161-20 at 75:6-21.

pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). Plaintiffs must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. The Court need not accept as true legal conclusions or unsupported allegations. *Iqbal*, 556 U.S. at 678, 680-81; *see also Westcott v. Omaha*, 901 F.2d 1486, 1488 (8th Cir. 1990) ("We do not, however, blindly accept the legal conclusions drawn by the pleader from the facts.").

"In addressing a motion to dismiss, '[t]he court may consider the pleadings themselves, material embraced by the pleadings, exhibits attached to the pleadings, and matters of public record.' " *Illig v. Union Elec. Co.*, 652 F.3d 971, 976 (8th Cir. 2011) (quoting *Mills v. City of Grand Forks*, 614 F.3d 495, 498 (8th Cir. 2010)). The consideration of judicially noticed facts, such as public court records, does not convert a motion to dismiss into one for summary judgment. *State ex rel. Nixon v. Coeur D'Alene Tribe*, 164 F.3d 1102, 1107 (8th Cir. 1999).

## ANALYSIS

### I. Counts I through V should be dismissed because they duplicate existing litigation and split claims.

A court can dismiss claims that duplicate existing litigation, also referred to as claim splitting. *Leftwich v. Cnty. of Dakota*, Civ Nos. 18-1144 (JNE/BRT), 19-393 (JEN/BRT), 2019 WL 13241669, at *2-4 (D. Minn. May 29, 2019) (collecting authorities). There is a "general policy that duplicative litigation in federal courts should be avoided," *Missouri ex rel. Nixon v. Prudential Health Care Plan, Inc.*, 259 F.3d 949, 953 (8th

Cir. 2001), and courts apply the "rule against claim-splitting" that "prevents a party from pursuing two distinct lawsuits that assert claims arising out of the same operative facts." *Leftwich*, 2019 WL 13241669, at *2 (quoting *Woodards v. Chipotle Mexican Grill, Inc.*, Case No. 14-cv-4181 (SRN/SER), 2015 WL 3447438, at *11 (D. Minn. May 28, 2015). "It is well established that claim-splitting is discouraged. All claims must be brought together and cannot be parsed out to be heard by different courts." *Sparkman Learning Ctr. v. Ark. Dep't of Human Servs.*, 775 F.3d 993, 1000 (8th Cir. 2014).

When determining whether to dismiss claims that are duplicative, "the determining factors should be equitable in nature, giving regard to wise judicial administration." *Leftwich*, 2019 WL 13241669, at *2 (quoting *Brewer v. Swinson*, 837 F.2d 802, 804 (8th Cir. 1988)). "Litigation is duplicative if a plaintiff attempts to litigate 'the same issue at the same time in more than one federal court.'" *Id.* at *3 (quoting *Ritchie Cap. Mgmt., L.L.C. v. Jeffries*, 849 F. Supp. 2d 881, 888 (D. Minn. 2012)). "Causes of action brought under different legal theories in different legal cases are considered the same if they rely on a 'common nucleus of operative fact' and seek 'effectively the same relief . . . in both cases." *Id.* (quoting *Friez v. First Am. Bank & Trust of Minot*, 324 F.3d 580, 581 (8th Cir. 2003). The parties do not have to be exactly the same for litigation to be "duplicative." *Id.* (citing *Ritchie*, 849 F. Supp. 2d at 889) ("Litigation involving non-identical parties may be duplicative where the interests of non-identical parties are aligned or related.").

Claim splitting is "related" to res judicata, except that res judicata requires a final judgment in one action whereas claim splitting applies where both cases are still

pending. *Id.* (quoting *MacIntyre v. Lender Processing Servs., Inc.*, Civ. No. 12-1514 (PAM/SER), 2012 WL 4872678, at *2 (D. Minn. Oct. 15, 2012)). The party seeking to invoke claim splitting must show that (1) "the first suit was based on proper jurisdiction," (2) "both suits involve the same parties"; and (3) "both suits are based upon the same claims or causes of action." *Id.* (quoting *Yankton Sioux Tribe v. U.S. Dep't of Health and Human Servs.*, 533 F.3d 634, 639 (8th Cir. 2008)).

Here, the first two elements of the claim splitting analysis are not in question. The Court has federal question jurisdiction over the Original Suit's claims brought under 42 U.S.C. § 1981 and supplemental jurisdiction to hear the state law causes of action brought by plaintiffs and the counterclaims brought by Retsel Corporation and Nick Uhre. Second, both suits involve the same parties or those that are aligned or related. NDN Collective is the sole counterclaim defendant in the Original Suit and is a defendant in the New Suit. Red Bear, Jackson, Eagle, Bowman, Cottier, and Bettelyoun are plaintiffs in the Original Suit, and Retsel alleges in the New Suit that these individuals, along with Nick Tilsen, are "members" of NDN Collective. (Compl. ¶ 21.) Additionally, Retsel also alleges that Nick Tilsen is the president and CEO of NDN Collective. (Compl. ¶ 15.) Therefore, both suits involve the same parties and those parties are also aligned and related.

The third element of claim splitting—whether both suits are based upon the same claims or causes of action—requires an analysis of each count brought against the Native American Defendants in the New Suit.

**A. Count I (intentional interference) duplicates the Original Suit's claim for intentional interference.**

Count I of the New Suit is a claim for intentional interference with business relations. Retsel previously brought this claim as a counterclaim in the Original Suit and amended the counterclaim as recently as May 1, 2024. (Original Suit, Dkt. 128.) Following extensive discovery, the Court granted NDN Collective's motion for summary judgment on that counterclaim. (Original Suit, Dkt. 212 at 27-31.) The Court found that Retsel failed to properly identify a third party and failed to identity any wrongful or improper conduct—elements of the claim. (*Id.*) Now, Retsel is using the New Suit to improperly amend its counterclaim again and relitigate the same argument: that NDN Collective and its employees generally harmed Retsel's business and interfered with the public at large as prospective customers when they filed a civil rights lawsuit and made statements online. (Compl. ¶¶ 69-85.) While this claim fails as a matter of law, addressed below, it relies on the same nucleus of operative fact as Retsel's counterclaim in the Original Suit. Therefore, Count I asserts the same legal theory, relies on the same nucleus of facts, and seeks the same remedies as the previously-dismissed claim for intentional interference.

**B. Count II (injurious falsehood) duplicates the Original Suit's claims for intentional interference and defamation.**

Count II of the New Complaint is a claim for injurious falsehood. (Compl. ¶¶ 86-89.) Retsel alleges in Count II that "NDN Collective members" generally made "false statements" on social media "intended to harm the Retsel Corporation." (Compl. ¶ 87.) While now applying the label of "injurious falsehood" to these allegations, the claim is

the same as those litigated in the Original Suit under intentional interference with business relations (dismissed on summary judgment) and defamation (ready for trial). (*See* Original Suit, Dkt. 212 at 27-31.) In both suits, these claims arise from the same set of facts regarding online social media statements made by individuals allegedly affiliated with NDN Collective and what effect, if any, these statements had on Retsel's business.[6] Count II of the New Suit therefore relies on the same operative facts and seeks the same remedies as the claims in the Original Suit.

**C. Count III (defamation) duplicates the Original Suit's claim for defamation.**

Retsel brings a claim for defamation in Count III of the New Complaint. Retsel brought a counterclaim for defamation in the Original Suit and amended that counterclaim in May 2024. (Original Suit, Dkts. 94-1 & 127.) Retsel's defamation claim in the New Suit rehashes their allegations regarding Red Bear and the Marshalls football team from their amended counterclaim for intentional interference with business relations in the Original Suit. (Compl. ¶¶ 90-95.) Because Count III asserts the same legal theory, relies on the same nucleus of operative facts, and seeks the same relief as a claim in the Original Suit, Count III satisfies the third element of the claim splitting test.

**D. Count IV (forgery) duplicates the Original Suit's claim for defamation.**

Retsel brings a claim for forgery in Count IV of the New Complaint. (Compl. ¶¶ 96-110.) The allegations of forgery rely on the same allegations of defamation Retsel

[6] To the extent that the allegations in Count II involve statements made regarding Gateway Autoplex, those statements were not involved in the Original Suit, but Retsel does not own the Gateway Autoplex and this bare pleading does not satisfy Rule 9(b).

alleged in the Original Suit. (Dkt. 128 Counterclaims ¶¶ 41-45.) Both claims center on the allegation that Hermus Bettelyoun altered an email to attribute certain statements to Nick Uhre. Count IV of the New Complaint relies on the same operative facts and seeks the same relief as Retsel and Nick Uhre's defamation counterclaim in the Original Suit.

**E. Count V (RICO) duplicates the Original Suit's claims for intentional interference, nuisance, and civil conspiracy.**

Count V of the New Suit alleges a violation of the federal Racketeer Influenced and Corrupt Organizations Act (18 U.S.C. §§ 1961-1968). (Compl. ¶¶ 111-122.) The claim alleges that defendants, including NDN Collective and its "members," interfered with Retsel's business through acts of vandalism, made defamatory statements about Retsel online, and committed wired fraud and extortion. (*Id.*) The allegations arise from the same nucleus of operative facts in Retsel's counterclaims for intentional interference, nuisance, and civil conspiracy in the Original Suit. (Original Suit, Dkt. 128 Counterclaims ¶¶ 51-60.) There, Retsel claimed that NDN Collective, its employees, and unnamed third-party defendants conspired to generally interfere with Retsel's business and publish false information. (*Id.*) Retsel's intentional interference and civil conspiracy counterclaims were dismissed on summary judgment. (Original Suit, Dkt. 212 at 37.) Most of Retsel's nuisance counterclaim was dismissed as well, and the remaining portions of Retsel's nuisance counterclaim are trial-ready. (*Id.* at 36-37.) Retsel's RICO claim in the New Suit and its tortious interference, nuisance, and civil conspiracy counterclaims in the Original Suit rely on the same operative facts and seek the same relief.

**F. The equitable considerations of the prohibition on claim splitting overwhelmingly require dismissal of Retsel's New Suit with prejudice.**

Because Counts I through V satisfy all three elements of the claim splitting analysis regarding the Native American Defendants, the Court next considers whether to dismiss the duplicative litigation. *Leftwich*, 2019 WL 13241669, at *4 (citing *Ritchie*, 849 F. Supp. 2d at 890-91). The following equitable factors guide the analysis: "(1) conservation of judicial resources; (2) the comprehensive disposition of litigation; (3) the relative progress of the two actions; (4) whether a suit is filed for vexatious, reactive, or tactical purpose, and (5) whether the forum in which the first case was filed adequately protects the rights of the litigants in the second case." *Id.* (citing *Ritchie*, 849 F. Supp. 2d at 890-91). These factors are to be applied "in a pragmatic, flexible manner with a view to the realities of the case at hand." *Id.* (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 21 (1983)).

Here, each claim asserted broadly against all defendants, including the Native American Defendants, is duplicative of the counterclaims that Retsel brought in the Original Suit. Significant judicial resources have been expended through five discovery motions, multiple dispositive motions, and trial preparation in the Original Suit. Retsel should not be permitted to use the New Lawsuit to relitigate factual issues that have been, or will be, adjudicated in the Original Suit, and they should not be permitted to use the guise of new legal theories or labels to get a re-do on claims that they already lost. The conservation of judicial resources factor weighs strongly in favor of dismissal.

In the Original Suit, the Court permitted plaintiffs and defendants to comprehensively bring forward and litigate all claims arising out of the events at the Grand Gateway in June 2020, March 2022, and the boycott and protests that followed. The Court has allowed Retsel to amend it pleadings as late as May 1, 2024, the parties have brought discovery motions, and the parties provided extensive summary judgment briefing. When the Original Suit was on the eve of trial, Retsel brought the New Complaint to start litigation anew. The Original Suit is and has been Retsel's opportunity to comprehensively dispose of its dispute with NDN Collective arising out of the events of March 2022 and the ensuing protests. The second factor—the comprehensive disposition of litigation—weighs strongly in favor of dismissal.

The third factor—the relative progress of the two actions—presents a stark contrast. The Original Suit commenced in March 2022 and, after two and a half years of litigation, was set for trial to begin on Monday, September 9, 2024. On Friday, September 6, 2024, Retsel filed the New Suit. The only reason trial in the Original Suit did not commence as scheduled is because Retsel filed a bankruptcy petition on September 7, 2024, only to later move to dismiss its own bankruptcy petition. The Original Suit remains in the same posture it was on September 7, 2024: ready for trial. The significant progress in the Original Suit, and the complete lack thereof in the New Suit, tips the third factor decisively in favor of dismissal.

Under the fourth factor, the Court considers whether a suit is filed for vexatious, reactive, or tactical purpose. Retsel filed the New Suit shortly after most of Retsel's counterclaims were dismissed on summary judgment. Retsel failed to develop evidence

to support its claims in the Original Suit, including by failing to produce documents to support its claims and failing to identify a damages expert. After losing the vast majority of its claims, Retsel now wants to pretend like the Original Suit did not happen and simply re-do the litigation starting from the beginning.

Moreover, Retsel filed the New Suit on September 6, 2024. One day later, Retsel declared bankruptcy to prevent the trial in the Original Suit from moving forward. (Original Suit, Dkt. 260.) Two months later, Retsel moved to dismiss its own bankruptcy, admitting that liquidating the NDN Defendants' claim was a prerequisite to any reorganization under the bankruptcy code. (*In re Retsel Corp.*, Case No. 24-50081, Dkt. 85 (D.S.D. Bankr. Oct. 31, 2024). The sequence of these filings makes clear that the New Suit was designed to allow Retsel to relitigate its counterclaims from the Original Suit using the vehicle of the New Suit while the bankruptcy automatically stayed the claims Retsel was defending in the Original Suit.

In addition, allowing the claims in the New Suit to proceed would force the Native American Defendants to repeat the discovery process they already completed. The Native American Defendants were all subjected to depositions, document production, and written interrogatories in the Original Suit. They should not be subjected to a new round of litigation over the same facts. Nor should the Native American Defendants have to relitigate claims they already largely defeated.

Finally, as discussed earlier in this motion, Retsel appears to be using this New Suit not to advance meritorious claims but instead to perpetuate factual narratives that it knows to be incorrect. For example, Retsel claimed that it apologized right away, but

it clearly did not: it did not apologize until it was forced to do so in the Consent Decree. In other words, Retsel is using the Complaint in the New Suit to try to rewrite the public narrative surrounding its business, not to pursue meritorious litigation.

Retsel's New Suit is a stark example of vexatious, reactive, and tactical purposes for filing a suit. Because the New Suit is brought for an improper purpose, the fourth factor weighs in favor of dismissal.

The fifth and final factor considers whether the forum in which the first case was filed adequately protects the rights of the litigants in the second case. Here, Retsel has chosen the same forum for the New Suit as it is subject to in the Original Suit. The parties have had a full and fair opportunity to bring claims and counterclaims and amend them in the Original Suit. The forum adequately protects the parties' rights in both suits, so there is no need for a second, duplicative suit. This factor weighs in favor of dismissal.

The New Suit relies on the same events and allegations as Retsel's counterclaims in the Original Suit, and it brings the same or renamed claims against the same or related parties. The New Suit duplicates litigation that has already advanced through the same forum with significant investment of the Court's and the parties' resources. Considered through the pragmatic and equitable lens courts use when evaluating claim splitting, Counts I through V must be dismissed, with prejudice, against the Native American Defendants because Retsel has improperly split its claims. *See In re Beckmann*, Case No. 3:16-CV-04959, 2023 WL 8785135, at *1 (N.D. Ga. Oct. 18, 2023) (dismissing a complaint with prejudice based on claim splitting); *Murray v. US Bank, N.A. for J.P.*

*Morgan Mort. Trust 2007-S3*, Case No. 18-CV-80159, 2018 WL 3439451, at *4 (S.D. Fla. July 17, 2018) (same).

## II. Counts I through V fail to identify specific defendants against whom each claim is brought.

Counts I through V[7] should be dismissed for failure to identify specific defendants against whom each claim is asserted. "A complaint which lumps all defendants together and does not sufficiently allege who did what to whom, fails to state a claim for relief because it does not provide fair notice of the grounds for the claims made against a particular defendant." *Tatone v. SunTrust Mortg., Inc.*, 857 F. Supp. 2d 821, 831 (D. Minn. 2012); *see also Clayborn v. Minnesota Dep't Corr.*, Case No. 23-CV-3612 (JMB/TNL), 2024 WL 3105956, at *3 (D. Minn. June 24, 2024) ("Pleadings in which a litigant does not identify the specific defendant against which each claim is asserted (so-called 'kitchen-sink pleadings') fall short of the minimum pleading requirements set forth in Rule 8(a).") (collecting cases). Plaintiffs' failure to identify specific defendants for specific claims inappropriately "shifts onto the defendant[s] and the court the burden of identifying the plaintiff's genuine claims and determining which of those claims might have legal support." *Gurman v. Metro Hous. and Redevelopment Auth.*, 842 F. Supp. 2d 1151, 1153 (D. Minn. 2011) (citing *Tully v. Bank of American, N.A.*, Civil No. 10-4734 (DWF/JSM), 2011 WL 1882665, at *6 (D. Minn. May 17, 2011)). When a complaint fails to state which claims are made against particular

[7] Count VI for "Negligence Against the Rapid City Police Department" is the only claim that is directed toward a specific defendant and is not brought against any of the Native American Defendants.

defendants, it "will be subject to dismissal for failure to comply with Rule 8 and Rule 11 of the Federal Rules of Civil Procedure." *Liggins v. Morris*, 749 F. Supp. 967, 971 (D. Minn. 1990).

Here, Counts I through V are not directed toward specific defendants, so each of the Native American Defendants is left guessing whether the corresponding allegations and claims are brought against any or all of them. (*See* Compl. at 9-15.) For example, it is unclear whether Retsel is alleging that NDN Collective, some or all of the individual defendants, or all of the above are defendants under Count I. Similarly, the roles of Booking Holding and Expedia are unclear—they may be defendants or they may be the third parties for purposes of the alleged interference. After all, while Count I does not appear to allege wrongdoing by Booking Holdings and Expedia, those entities are named as defendants in this matter and do not appear to be involved in any of the other causes of action. And Counts II (injurious falsehood) and III (defamation) appear to relate only to Red Bear's conduct, so it is unclear whether any of the other defendants must defend against those claims. The Native American Defendants should not have to ferret out legal claims against them and, in doing so, defend against claims that are not brought against them. Neither should the Court have to strain to find an inference of a claim against each and every defendant where Retsel has failed to satisfy the requirements of Rule 8.

Retsel has had years of discovery in the Original Suit to uncover evidence to support its allegations. In fact, the Court dismissed many of Retsel's identical allegations in the Original Suit because Retsel did not have any evidence to connect

those allegations to NDN Collective even after discovery. (*See* Dkt. 212 at 27-36.) Retsel may not simply repeat the exercise of alleging that vague "members" of NDN Collective took a litany of actions and force the Native American Defendants to go through years of discovery—again—to prove that Retsel has no factual basis for its claims against them.

Retsel's failure to identify specific defendants against whom each claim is brought is a sufficient basis to dismiss the Counts I through V against the Native American Defendants. *See Tatone*, 857 F. Supp. 2d at 831 (dismissing claims for "failure to differentiate among the defendants").

## III. Plaintiffs have failed to state a claim in Counts I through V.

### A. Retsel's claim for intentional interference with business relations fails to identify an unjustified act of interference or an identifiable third party.

A claim for intentional interference with a business relationship or expectancy has five elements:

> (1) the existence of a valid business relationship or expectancy;
> (2) knowledge by the interferer of the relationship or expectancy;
> (3) an intentional and unjustified act of interference on the part of the interferer;
> (4) proof that the interference caused the harm sustained;
> (5) damage to the party whose relationship or expectancy was disrupted.

*Qwest Commc'ns Corp. v. Free Conferencing Corp.*, 837 F.3d 889, 895 (8th Cir. 2016) (citing *Selle v. Tozser*, 786 N.W.2d 748, 753 (S.D. 2010)). To have a valid business relationship or expectancy—the first element—the plaintiff must show that it had a contract, business relationship, or a business expectancy, with an identifiable third party. *Lien v. Lien*, 674

N.W.2d 816, 826 (S.D. 2004) (*Landstrom v. Shaver*, 561 N.W.2d 1, 16 (S.D. 1997)). The public at large does not qualify as an identifiable third party. *Table Steaks v. First Premier Bank, N.A.*, 650 N.W.2d 829, 835 (S.D. 2002)

Retsel fails to state a claim for intentional interference with business relations. First, like in the Original Suit, Retsel alleges that defendants have caused Retsel to lose business from the public at large. (Complaint ¶¶ 69-85.) But this is not an identifiable third party and therefore fatal to their claim. *See NDN Collective v. Retsel Corp.*, Case No 5:22-CV-05027-LLP, 2023 WL 8480789, at *3 (D.S.D. Dec. 7, 2023) (finding the public generally to be an insufficient "identifiable third party").

Beyond the public at large, Retsel appears to allege that defendants specifically interfered with business relations between Retsel and Expedia and Booking.com. (See Complaint ¶¶ 70-81.) But the acts of interference are (1) the filing of the Original Suit and (2) Ferguson's filing of a complaint EEOC. (Complaint ¶¶ 70-81.) Filing a civil rights lawsuit or a complaint with the EEOC are not unjustified acts of interference and therefore there is no cause of action. *See Paint Brush Corp., Parts Brush Div. v. Neu*, 599 N.W.2d 384, 399 (S.D. 1999) (citation omitted) (including "intentional and unjustified act of interference" as an element of the claim). Rather, those acts are protected speech and protected statutory reporting. Retsel's claim for intentional interference with business relations fails as a matter of law.

**B. Retsel does not have standing to assert a claim of injurious falsehood on behalf of a different business.**

The South Dakota Supreme Court has recognized a claim for injurious falsehood:

> One who publishes a false statement harmful to the interests of another is subject to liability for pecuniary loss resulting to the other if (a) he intends for publication of the statement to result in harm to interests of the other having a pecuniary value, or either recognizes or should recognize that it is likely to do so, and
> (b) he knows that the statement is false or acts in reckless disregard of its truth or falsity.

*Gregory's, Inc. v. Haan*, 545 N.W.2d 488, 493 (S.D. 1996) (quoting Restatement (Second) Torts § 623A (1977)).

Here, Retsel's injurious falsehood claims rests largely on allegations concerning social media statements concerning Gateway Autoplex made by Red Bear and Hermus Bettelyoun, a NDN Collective employee not personally party to this lawsuit. (Complaint ¶¶ 87-89.) But Gateway Autoplex is a separate business that is not related to or affiliated with Retsel. Publicly available documents demonstrate that Gateway Autoplex is distinct from Grand Gateway.[8]

Retsel does not have standing to bring a claim where Retsel itself has not allegedly been injured. To assert standing, a plaintiff must establish that it: "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). To suffer "an injury in fact", there must be "an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or

[8] Billion Decl. Ex. 1.

imminent, not conjectural or hypothetical[.]" *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (citations and internal quotation marks omitted).

Retsel has not alleged injury to itself that is traceable to the acts of the Native American Defendants regarding comments directed toward Gateway Autoplex. Therefore, the claim should be dismissed for lack of standing.

Finally, apart from Retsel's lack of standing, Retsel fails to allege that any Native American Defendant made a statement <u>about Retsel</u> that they knew was false or that they made in reckless disregard of the truth. This, too, dooms Retsel's claim, and it should be dismissed under Rule 12(b)(6) and Rule 9(b).

**C. Count III for defamation is barred by the statute of limitations.**

In South Dakota, defamation claims must be commenced within two years after the cause of action accrued. *See* SDCL § 15-2-15(1). Retsel's defamation claim focuses entirely on statements Red Bear allegedly made to the Marshals football team on April 19, 2022. (Compl. ¶¶ 55-56, 90-95.) Plaintiffs had until April 19, 2024, to file a defamation claim. The New Suit was filed on September 6, 2024. The claim is untimely and must be dismissed. *See Waldner v. N. Am. Truck & Trailer, Inc.*, 277 F.R.D. 401, 407-08 (D.S.D. 2011) (stating that a court may dismiss a claim under Rule 12(b)(6) as barred by the statute of limitations when the complaint itself establishes that the claim is time-barred) (collecting cases).

**D. Forgery is not a civil cause of action in South Dakota.**

Count IV for forgery is meritless because forgery is a criminal offense in South Dakota, not the basis of a civil claim. *See* SDCL § 22-39-36; *Stanely v. Hall*, 2006 WL

3138824, at *18 (D.S.D. Oct. 31, 2006) (stating that "[t]he rule generally throughout the country is that a criminal statute gives rise to a civil cause of action if and only if that appears by express terms or by clear implication to have been the legislative intent." (citation omitted) (alteration in original)); *Raines v. Hollingsworth*, 2010 WL 1409442, at *5 (D.S.D. Apr. 2, 2010) (declining to recognize a private right of action for violation of a criminal statute absent clear authority). In the absence of a private right of action under the criminal statute, the claim must be dismissed.

**E. Retsel has failed to state a RICO claim.**

Retsel's bare-bones RICO claim does not specify which section of 18 U.S.C. § 1962 it believes the Native American Defendants violated. *See* Compl. ¶ 120 (citing only 18 U.S.C. § 1961(1), which supplies definitions). Section 1962(a) cannot apply because the Complaint does not allege the investment of unlawful income in an enterprise. Section 1962(b) does not apply because the Complaint does not allege the acquisition or maintenance of an interest or control of an enterprise. Instead, it appears that Plaintiffs base their RICO claims on an alleged violation of 18 U.S.C. § 1962(c), which prohibits "any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt."

"A violation of § 1962(c) requires [Plaintiffs] to show '(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity.'" *Nitro Distrib., Inc. v. Alticor, Inc.*, 565 F.3d 417, 428 (8th Cir. 2009) (quoting *Sedima S.P.R.L. v. Imrex Co.*, 473

U.S. 479, 496 (1985)). "A RICO claim must be pleaded with particularity under Rule 9(b)." *Crest Constr. II, Inc. v. Doe*, 660 F.3d 346, 353 (8th Cir. 2011). In other words, Retsel must plead "the who, what, when, where, and how" of each element of its RICO claim. *Id.* (quoting *Summerhill v. Terminix, Inc.*, 637 F.3d 877, 880 (8th Cir. 2011)).

**1. Retsel failed to plead a racketeering activity.**

Retsel cannot identify qualifying racketeering activity by the Native American Defendants. "RICO 'does not cover all instances of wrongdoing. Rather, it is a unique cause of action that is concerned with eradicating organized, long-term, habitual criminal activity.'" *Crest Constr. II, Inc. v. Doe*, 660 F.3d 346, 353 (8th Cir. 2011) (quoting *Gamboa v. Velez*, 457 F.3d 703, 705 (7th Cir. 2006)). The only criminal activity alleged in the Complaint that could support a RICO claim is a single paragraph alleging wire fraud and a single paragraph alleging extortion. (Compl. ¶ 121 (wire fraud), ¶ 122 (extortion).) Those allegations do not come close to supporting a RICO claim.

Retsel's allegation of wire fraud—a "doctored email [] transmitted through the internet" and attached to the Complaint as Exhibit 16—is not a communication made by any of the Native American Defendants or any other defendant. It is also not wire fraud as defined in 18 U.S.C. § 1343 because there is no allegation in the Complaint that the email in Exhibit 16 was part of a scheme to defraud—in other words, to obtain any money from Retsel or anyone else under false pretenses. The Complaint does not establish an allegation of wire fraud under Rule 8, much less under Rule 9(b) as required.

Retsel's allegation of extortion also falls short. Under 18 U.S.C. § 1951, extortion means "the obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear . . . ." Again, Retsel does not allege that any of the Native American Defendants ever obtained property from Retsel.[9] Nor does Retsel connect any transfer of property to any use of actual or threatened force, violence, or fear.

Retsel's general grievances regarding vandalism and harassment are not instances of racketeering activity. They do not establish either wire fraud or extortion for the reasons discussed above. 18 U.S.C. § 1961(1) enumerates the predicate crimes that constitute a racketeering activity, and Retsel's generalized grievances do not fall into any of those categories. They also are not pleaded with any specificity (likely because, as established in discovery and motion practice in the Original Suit, Retsel has no evidence to connect those allegations to NDN Collective). Retsel's allegation that unidentified members of NDN Collective did unidentified things to annoy Retsel at unidentified times is not sufficient to plead a RICO claim under either Rule 8 or Rule 9(b).

Because Retsel has failed to plead a racketeering activity with the specificity required by Rule 9(b), its RICO claim fails from the outset.

---

[9] Paragraph 122 of the Complaint alleges that "defendants were able to rent rooms at the Gateway hotel." The Native American Defendants assume this is a typographical error—as clearly established in the Original Suit, none of the Native American Defendants were able to rent a room on March 21 or 22, 2022. But even if they were, renting a hotel room from a hotel is not the type of property acquisition that could support an extortion claim.

**2. Plaintiffs failed to plead a pattern of racketeering activity.**

Because Retsel has not alleged any racketeering activity, Retsel necessarily has not established a pattern of racketeering activity. But even if the purported wire fraud and extortion allegations were racketeering activities, Retsel has not pleaded a pattern of racketeering. A pattern of racketeering requires relatedness of the acts and continuity over time.

Relatedness means that the predicate acts have similarities regarding purpose, result, participants, victims, methods, or other distinguishing characteristics. *See H.J. Inc. v. Northwestern Bell Telephone Co.*, 492 U.S. 229, 240 (1989). Here, the only two allegations—an allegedly doctored email aimed a Nick Uhre, and the act of filming in the Grand Gateway to pressure the hotel into renting rooms—do not share any similarities. Therefore, those acts, as alleged, do not establish a related pattern.

Continuity is a temporal concept that involves either a "closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of repetition." *Id.* at 241. The Complaint only alleges a single instance of wire fraud, so there is no pattern of repeated conduct. As to entering the hotel filming employees, which is the factual basis marginally pleaded in the Complaint as extortion, those events occurred only on March 21 and 22, 2022. Even if those acts were extortion—which they were not—they were not a pattern of extortion because it did not continue for a long enough time. *See Crest Constr. II*, 660 F.3d at 357-58 (noting that a scheme that allegedly lasted seven months was legally insufficient to constitute a pattern of activity).

To plead a pattern of racketeering activity, Retsel would have to show both the required continuity by pleading predicate acts of sufficient duration, and then it would have to meet the additional requirement of showing relatedness under the multi-factored analysis discussed above. It can do neither. Therefore, Retsel has not pleaded a pattern of racketeering activity.

**3. Plaintiffs failed to plead an enterprise.**

RICO also requires Retsel to plead the existence of a RICO enterprise that is distinct from a person. Here, Retsel made no effort whatsoever to define the alleged RICO enterprise. That failure alone should result in the dismissal of Retsel's RICO claim (particularly when coupled with Retsel's improper group pleading strategy).

Even if Retsel had explained what it thought the RICO enterprise is, courts generally reject efforts to circumvent the person/enterprise distinction by alleging that the RICO enterprise consists of a corporate defendant and its employees. *See, e.g.*, *Cruz v. FXDirectDealer, LLC*, 720 F.3d 115, 121 (2d Cir. 2013) (observing that the required person/enterprise distinction "cannot be evaded by alleging that a corporation has violated the statute by conducting the enterprise that consists of itself plus all or some of its officers or employees"). Such allegations simply amount to a claim that an entity is acting through its employees or agents, which does not satisfy the person/enterprise distinction required by RICO. Therefore, the Complaint fails to establish a RICO enterprise.

**4. The three different plaintiffs cannot establish standing based on injury to another and cannot prove causation.**

"RICO provides a private right of action for any person 'injured in his business or property by reason of a violation of' its substantive prohibitions." *Dahlgren v. First Nat'l Bank of Holdrege*, 533 F.3d 681, 689 (8th Cir. 2008) (quoting 18 U.S.C. § 1964(c)).

The three plaintiffs cannot mix and match to establish standing for a RICO claim. For instance, Connie Uhre and Retsel did not suffer any damage to business or property because of the allegedly doctored email attributing Connie Uhre's statements to Nick Uhre. And neither Connie Uhre nor Nick Uhre suffered any injury to property due to acts aimed at Retsel because RICO does not permit derivative injuries, such as lost value by a shareholder, to confer standing. *See, e.g., Trollinger v. Tyson Foods, Inc.*, 370 F.3d 602, 612-13 (6th Cir. 2004).

All three plaintiffs also cannot prove causation—i.e., that their injuries were caused by the allegedly unlawful RICO predicate acts. Any decision by potential guests to stay away from the Grand Gateway is too attenuated to be directly and proximately caused by the conduct alleged in the Complaint.

Retsel has failed to state a civil RICO claim, and Count V must be dismissed against the Native American Defendants.

**CONCLUSION**

Counts I through V should be dismissed against the Native American Defendants because (1) Retsel has impermissibly engaged in claim splitting to obtain a second chance at litigating claims it has already brought; (2) Retsel has failed to identify

specific defendants to whom each count is brought against, and (3) Retsel has failed to state a claim against under Rule 12(b)(6).

Dated: January 27, 2024

Respectfully submitted,

*/s/ Timothy W. Billion*
Brendan V. Johnson (SD Bar # 3263)
Timothy W. Billion (SD Bar # 4641)
Thad A. Titze (SD Bar # 5204)
ROBINS KAPLAN LLP
150 E 4th Pl., Suite 704
Sioux Falls, SD 57104
Tel: 605-335-1300
BJohnson@RobinsKaplan.com
TBillion@RobinsKaplan.com
TTitze@RobinsKaplan.com

ATTORNEYS FOR PLAINTIFFS