UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
WESTERN DIVISION

| | |
|---|---|
| RETSEL CORPORATION, d/b/a Grand Gateway Hotel and d/b/a Cheers Sports Lounge and Casino, CONNIE UHRE, and NICHOLAS UHRE,<br><br>    Plaintiffs,<br><br>    vs.<br><br>NDN COLLECTIVE, individually and on behalf of all others similarly situation, SUNNY RED BEAR, individually and on behalf of all others similarly situated, NICK TILSEN, individually and on behalf of all others similarly situated, MARY BOWMAN, individually and on behalf of all others similarly situated, NICK COTTIER, individually and on behalf of all others similarly situated, ALBERTA EAGLE, individually and on behalf of all others similarly situated, BRE JACKSON, individually and on behalf of all others similarly situated, GEORGE BETTELYOUN, individually and on behalf of all others similarly situated, BOOKING HOLDINGS, INC. d/b/a Bookings.com, and THE RAPID CITY POLICE DEPARTMENT.,<br><br>    Defendants. | 5:24-CV-05070-LLP<br><br><br>MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS' MOTION TO DISMISS |

Pending before the Court is Defendants NDN Collective, Sunny Red Bear, Nick Tilsen, Mary Bowman, Nick Cottier, Alberta Eagle, Bre Jackson, and George Bettelyoun's (collectively, the "Native American Defendants") motion to dismiss Plaintiffs' claims against the Native American Defendants pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. (Docs. 36; 37). Plaintiffs have responded, Doc. 45, and the Native American Defendants have replied. (Doc. 47). The Court also notes that Plaintiffs filed an amended complaint as of right. (Doc. 23).

For the following reasons, the Native American Defendants' motion to dismiss Plaintiffs' claims against the Native American Defendants is granted.

## I.    FACTUAL BACKGROUND

Plaintiff Retsel Corporation (hereinafter "Retsel") is a South Dakota corporation which does business as the Grand Gateway Hotel and Cheers Sports Lounge and Casino located in Rapid City, South Dakota. (Doc. 23 PgID 165). Plaintiffs Connie Uhre and Nicholas Uhre either operate or did operate the Grand Gateway Hotel. (*Id.*). Nicholas Uhre is currently a director of Retsel. (*Id.*). Defendant NDN Collective is a non-profit South Dakota Corporation that benefits Native Americans. (*Id.* PgID 166). Defendants Nick Tilsen, Sunny Red Bear, Mary Bowman, Nick Cottier, Alberta Eagle, and Bre Jackson are Native American individuals who reside in Rapid City, South Dakota. (*Id.*). Nick Tilsen is the president and CEO of NDN Collective. (*Id.*). Defendant George Bettelyoun is a Native American who resides in Coon Rapids, Minnesota. (*Id.*). Plaintiffs allege that all individually named Defendants are members of NDN Collective. (*Id.*).

Plaintiffs currently have two active lawsuits with claims against NDN Collective. The first lawsuit, *NDN Collective et al. v. Retsel et al.*, Case No. 5:22-CV-05027-LLP (D.S.D.) (hereinafter "*Retsel I*"), began when NDN Collective, Sunny Red Bear, George Bettelyoun, Alberta Eagle, Nick Cottier, Bre Jackson, and Mary Bowman sued Retsel, Nick Uhre, and Connie Uhre for discrimination on the basis of race on March 23, 2022, in the Western Division of the District of South Dakota.[1]    In *Retsel I*, Retsel and Nick Uhre asserted five counterclaims against NDN Collective: (Counterclaim I) Intentional Interference with Business Relations; (Counterclaim II) Defamation; (Counterclaim III) Trespass; (Counterclaim IV) Nuisance; and (Counterclaim V)

---

[1] Because Defendants argue that the instant case (*Retsel II*) violates the rule against claim splitting, a discussion of both cases is required. Thus, the Court will take judicial notice of *Retsel I* in determining whether to dismiss *Retsel II*. *See C.H. Robinson Worldwide, Inc. v. Lobrano*, 695 F.3d 758, 763-64 (8th Cir. 2012).

Civil Conspiracy. (*Retsel I*, Doc. 128). The second lawsuit—and the one currently before the Court—*Retsel et al. v. NDN Collective et al.*, Case No. 5:24-CV-05070-LLP (D.S.D.) (hereinafter "*Retsel II*"), began when Retsel, Nick Uhre, and Connie Uhre sued the Native American Defendants on September 6, 2024, also in the Western Division of the District of South Dakota asserting five claims: (Count I) Intentional Interference with Business Relations; (Count II) Injurious Falsehood; (Count III) Defamation; (Count IV) Forgery; and (Count V) Civil RICO Conspiracy. (*Retsel II*, Doc. 23).

Both the counterclaims in *Retsel I* and the claims in *Retsel II* concern the alleged conduct of NDN Collective, through its claimed members, following Connie Uhre's post on her Facebook that Native Americans would no longer be allowed to stay at the Grand Gateway Hotel and other alleged racial comments and actions by Nick Uhre. The extent to which the lawsuits cover the same conduct and involve the same parties, however, is the key question before the Court. The Native American Defendants argue that *Retsel I* and *Retsel II* involve the same parties and rely on the same, or essentially the same, nucleus of operative facts, which would preclude *Retsel II* on claim splitting grounds. (*Retsel II*, Docs. 36; 37; 47). Plaintiffs argue in opposition that the parties to *Retsel I* and *Retsel II* are not identical and that the facts in *Retsel II* are temporally distinct from those in *Retsel I*. (*Retsel II*, Doc. 45). To analyze this dispute, the Court will summarize the relevant details of each lawsuit below.

### A. *Retsel I*

In June of 2020, George Bettelyoun and his sister attempted to rent a room at the Grand Gateway Hotel. (*Retsel I*, Doc. 84 PgID 1000). Nick Uhre declined to allow George Bettelyoun to rent a room after the two of them got into an argument. (*Id.* at 1001). George Bettelyoun alleges

that he was excluded on the basis of his race and subsequently posted about the incident on social media. (*Id.* at PgID 1004).

On March 19, 2022, Quincy Red Bear shot and killed Myron Blaine Pourier at the Grand Gateway Hotel. (*Id.* at PgID 1005). On March 20, 2022, Ms. Uhre posted on her Facebook that Native Americans would no longer be allowed to stay at the Grand Gateway Hotel. (*Id.* at PgID 1006). On March 21, 2022, Sunny Red Bear went to the Grand Gateway hotel to rent a room and was denied service. (*Id.* at PgID 1008). The next day, Alberta Eagle, Nick Cottier, Bre Jackson, and Mary Bowman also attempted to rent rooms from the Grand Gateway Hotel and were denied service as well. (*Id.* at PgID 1012). Sunny Red Bear, Alberta Eagle, Nick Cottier, Bre Jackson, and Mary Bowman allege that they were excluded on the basis of race. (*Id.*).

During this time, an email chain was created between Retsel and other local hospitality management and security personnel. (*Id.*). In this email chain, Connie Uhre again expressed her intention to not allow Native Americans on their property. (*Id.*). Hermus Bettelyoun—a non-party to either *Retsel I* or *Retsel II*—allegedly altered one of the emails to incorrectly attribute comments made by Connie Uhre to Nick Uhre and posted it social media. (*Retsel I*, Doc. 128 PgID 1735). In the social media post, Hermus Bettelyoun allegedly referred to Retsel as "Klan Members" and stated he would organize a boycott and protest of the Grand Gateway Hotel. (*Id.*). Plaintiffs allege that Hermus Bettelyoun is a member of NDN Collective. (*Id.*). Shortly thereafter, protests began at the Grand Gateway Hotel which allegedly resulted in damage to hotel property, incidents of trespassing, nuisance, and interference with Retsel's business. (*Id.*). On April 19, 2022, Sunny Red Bear learned that the Rapid City Marshalls football team was planning to stay at the Grand Gateway Hotel. (*Id.* at PgID 1738). Sunny Red Bear informed the team about the recent

4

controversy surrounding the Grand Gateway Hotel and of Connie Uhre's statements, and the team cancelled its reservation. (*Id.*).

On March 23, 2022, NDN Collective, Sunny Red Bear, George Bettelyoun, Alberta Eagle, Nick Cottier, Bre Jackson, and Mary Bowman filed a complaint against Retsel, Nick Uhre, and Connie Uhre alleging discrimination on the basis of race in violation of 42 U.S.C. § 1981. (*Retsel I*, Doc. 1). On August 17, 2022, Retsel and Nick Uhre asserted five counterclaims against NDN Collective: (Counterclaim I) Intentional Interference with Business Relations; (Counterclaim II) Defamation; (Counterclaim III) Trespass; (Counterclaim IV) Nuisance; and (Counterclaim V) Civil Conspiracy. (*Retsel I*, Doc. 18). On December 7, 2023, the Court granted NDN Collective's motion to dismiss Retsel's and Nick Uhre's counterclaims with the exception of the nuisance counterclaim. (*Retsel I*, Doc. 76). During discovery, Retsel and Nick Uhre learned of additional pertinent information, and on April 30, 2024, the Court granted Retsel and Nick Uhre leave to amend their counterclaims. (*Retsel I*, Doc. 127). On May 1, 2024, Retsel and Nick Uhre filed amended counterclaims which reasserted the same five counts: (Counterclaim I) Intentional Interference with Business Relations; (Counterclaim II) Defamation; (Counterclaim III) Trespass; (Counterclaim IV) Nuisance; and (Counterclaim V) Civil Conspiracy. (*Retsel I*, Doc. 128).

Counterclaim I alleged that NDN Collective harmed Retsel's business relationships and expectancies by encouraging its members to post statements on social media regarding the Grand Gateway Hotel's alleged policy towards Native Americans, protesting outside of the hotel, and by persuading the Rapid City Marshals Football team to cancel its contract with the hotel. (*Id.* PgID 1739). Counterclaim II alleged that Hermus Bettelyoun posted the altered email on social media and made false and defamatory statements about Retsel and Nick Uhre. (*Id.* at PgID 1740). Counterclaims III and IV alleged trespass and nuisance resulting from the protests outside of the

hotel and alleged property damage. (*Id.*). Counterclaim V alleged that NDN Collective, its members, and unnamed individuals engaged in a civil conspiracy to intentionally damage Retsel's business. (*Id.* at PgID 1742). Notably, the amended complaint complains of ongoing and continuing injury from NDN Collective, its members, and unidentified co-conspirators. (*Id.* at PgID 1739, 1742).

On August 22, 2024, the Court granted in part and denied in part NDN Collective's motion for summary judgment on Retsel's and Nick Uhre's counterclaims. (*Retsel I*, Doc. 212). The Court granted summary judgment on Counterclaim I (interference with business relations), Counterclaim III (trespass), and Counterclaim V (civil conspiracy), and denied summary judgment on Counterclaim II (defamation) and Counterclaim IV (nuisance). (*Id.*). Jury trial on the remaining claims was scheduled to commence on September 9, 2024. (*Retsel I*, Doc. 196).

On August 25, 2024, Retsel, Connie Uhre, and Nick Uhre moved for a certificate of appealability regarding the Court's summary judgment decision. (*Retsel I*, Doc. 219). That motion was denied on August 29, 2024. (*Retsel I*, Doc. 229). Despite denying Retsel's motion to certify, on August 30, 2024, Retsel filed an interlocutory appeal of the Court's summary judgment decision. *NDN Collective et al v. Retsel Corp. et al*, Case No. 24-2788. That same day, Retsel also filed a writ of mandamus seeking to have the Eighth Circuit Court of Appeals mandate that the district court reverse its summary judgment decisions. *In re Retsel Corp.*, Case No. 24-2783. On September 5, 2024, the Eighth Circuit Court of Appeals denied Retsel's interlocutory appeal and its writ of mandamus. *See NDN Collective et al*, No. 24-2788 (Denying Defendants' appeal of this Court's summary judgment orders.); *In re Retsel Corp.*, No. 24-2783 (Denying petition for writ of mandamus and Denying Defendants' request for rehearing.).

On Saturday afternoon, September 7, 2024, two days before trial was scheduled to commence, Retsel filed for Chapter 11 Bankruptcy resulting in an automatic stay of all proceedings with respect to Retsel. (*Retsel I*, Doc. 260). The entire case was stayed until the Bankruptcy Stay was lifted. (*Id.*). On November 26, 2024, the Bankruptcy Court granted Retsel's motion to dismiss its own bankruptcy petition, lifting the automatic stay. (Doc. 104, *In re Retsel Corporation*, Case No. 24-50081 (Bankr. D.S.D. Nov. 26, 2024)). *Retsel I* was scheduled to go to trial June 2, 2025, but was continued due to the illness of Defendant Connie Uhre. (*Retsel I*, Doc. 305).

### B. *Retsel II*

On September 6, 2024, two weeks after the Court granted summary judgment against Retsel and Nick Uhre on three of their counterclaims, and one day after the Eighth Circuit Court of Appeals denied their appeal of the Court's summary judgment orders and their writ of mandamus, Retsel, Nick Uhre, and Connie Uhre filed *Retsel II*—another case in federal district court against NDN Collective. (*Retsel II*, Doc. 1). This complaint, however, also names Sunny Red Bear, Nick Tilsen, Mary Bowman, Nick Cottier, Alberta Eagle, Bre Jackson, and George Bettelyoun as Defendants, all of whom are plaintiffs in *Retsel I* with the exception of Nick Tilsen. On February 17, 2025, following a motion to dismiss from the Native American Defendants, Plaintiffs filed an amended complaint as of right. (*Retsel II*, Doc. 23). The amended complaint contains five counts: (Count I) Intentional Interference with Business Relations; (Count II) Injurious Falsehood; (Count III) Defamation; (Count IV) Forgery; and (Count V) Civil RICO Conspiracy. (*Id.*).

The amended complaint contains many of the same facts alleged in support of the counterclaims in *Retsel I*. The amended complaint alleges that George Bettelyoun, after being denied service at the Grand Gateway Hotel, posted about the encounter on social media and

claimed that he was excluded on the basis of race. (*Id.* at PgID 167). The amended complaint also recounts the shooting that occurred at the Grand Gateway hotel, Connie Uhre's statements that followed, the allegedly altered email and subsequent posts to social media by Hermus Bettelyoun and other alleged NDN Collective members, Sunny Red Bear, Alberta Eagle, Nick Cottier, Bre Jackson, and Mary Bowman's attempts to rent a room at the Grand Gateway, and the resulting boycott and protests outside of the Grand Gateway Hotel. (*Id.* at PgID 168-70). The only relevant factual differences of *Retsel II* are two allegations from 2024.

The amended complaint alleges that on January 4, 2024, Nick Tilsen appeared on a podcast episode of Native America Calling, titled "Responding to Racism." (*Id.*; *Retsel II*, Doc. 48-1, Podcast Transcript). On the podcast, Mr. Tilsen allegedly discussed NDN Collective's civil rights lawsuit (*Retsel I*) against Retsel, Connie Uhre, and Nick Uhre, and "repeatedly called the Grand Gateway folks racists." (*Retsel II*, Doc. 23 PgID 171). The amended complaint also alleges that on February 15, 2024, Nick Uhre received an email from Booking Holdings, Inc. (hereinafter "Booking Holdings") informing him that Booking Holdings removed the Grand Gateway Hotel from its platform because it detected that the Grand Gateway Hotel was "discriminating against guests based on their Race/Ethnicity." (*Id.*; *Retsel II*, Doc. 23-5, Booking Holdings Email). That same day, Brandon Ferguson—a non-party to either *Retsel I* or *Retsel II*—filed a charge with the Equal Employment Opportunity Commission (EEOC) against Retsel for employment discrimination. (*Retsel II*, Doc. 23 PgID 171). Plaintiffs allege that Mr. Ferguson is a "suspected" member of NDN Collective and claim that the EEOC complaint was filed fraudulently and caused Booking Holdings to delist the Grand Gateway Hotel. (*Retsel II*, Doc. 23 PgID 171-73).

As to Count I, Plaintiffs allege that NDN Collective, through its members, intentionally harmed Retsel's business relationships with Expedia, Inc. (hereinafter "Expedia"), Booking

Holdings, and with guests that book reservations through said platforms by posting statements on social media regarding the Grand Gateway Hotel's alleged policy towards Native Americans, protesting outside of the hotel, and filing a civil rights lawsuit. (*Id.* at PgID 172). Count I also alleges Booking Holdings removed the Grand Gateway Hotel from its platform because Brandan Ferguson filed a "fraudulent" EEOC complaint. (*Id.*; *Retsel II*, Doc. 23-5, Booking Holdings Email).

Count II, a claim for injurious falsehood, alleges that the often-referenced social media posts by alleged NDN Collective members contained false information and were done with the intent to harm the pecuniary interests of Retsel. (*Id.* at PgID 174-75). Count III alleges that Sunny Red Bear defamed Retsel by passing out flyers containing false information at the Rapid City Marshals football team practice. (*Id.*). Count IV alleges forgery based on the allegation that Hermus Bettelyoun, a non-party to either case, altered an email to incorrectly attribute comments made by Connie Uhre to Nick Uhre and posted it on social media. (*Id.* at PgID 176-77). Count V alleges that NDN Collective members acted in concert to harm Retsel's business by creating a false impression that Plaintiffs are racist. (*Id.* PgID 179). In support of Count V, Plaintiffs point to the social media posts, protests, boycott, the allegedly altered email, and by documenting their attempts to rent rooms at the Grand Gateway Hotel. (*Id.* at PgID 178-80).

Attacking the similarities between *Retsel I* and *Retsel II*, the Native American Defendants renewed their motion to dismiss the amended complaint under Rule 12(b)(6) raising similar arguments, chiefly that it violates the rule against claim splitting and nonetheless fails on the merits. (*Retsel II*, Docs. 36; 37; 47). Plaintiffs contend in opposition that the parties to *Retsel I* and *Retsel II* are not identical and that the facts in *Retsel II* are temporally distinct from those in *Retsel I*. (*Retsel II*, Doc. 45).

## II.   DISCUSSION

### A.  Legal Standard

#### 1.  Motion to Dismiss Pursuant to Rule 12(b)(6)

To survive a motion to dismiss under Rule 12(b)(6), the complaint must contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face" such that the court may draw "the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 1947, 173 L.Ed.2d 868 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)); *see also Spagna v. Phi Kappa Psi, Inc.*, 30 F4th. 710, 715 (8th Cir. 2022) (dismissal proper where factual allegations failed to state a plausible claim for relief and amounted to only a possibility that relief was warranted).   While this pleading standard does not require "detailed factual allegations," it does demand "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft*, 556 U.S. at 678.  In considering a motion to dismiss pursuant to 12(b)(6), the court must assume all facts alleged in the complaint are true and construe all reasonable inferences most favorably to the non-moving party. *Torti v. Hoag*, 868 F.3d 666, 671 (8th Cir. 2017).  However, the court need not "accept as true a plaintiff's conclusory allegations or legal conclusions drawn from the facts." *Glick v. W. Power Sports, Inc.*, 944 F.3d 714, 717 (8th Cir. 2019) (citing *Hanten v. Sch. Dist. of Riverview Gardens*, 183 F.3d 799, 805 (8th Cir. 1999)).

Courts may consider motions to dismiss based on defenses such as improper claim splitting or the related doctrine of claim preclusion when "the identity of the two actions can be determined from the face of the petition itself," including "public records and materials embraced by the complaint and materials attached to the complaint." *C.H. Robinson Worldwide, Inc. v. Lobrano*, 695 F.3d 758, 763-64 (internal citations omitted); *see also Faloni and Associates, LLC v. Citibank*

*N.A.*, No. 19-4195, 2020 WL 4698475, \*2 (D.S.D. Aug. 13, 2020) (quoting *Miller v. Redwood Toxicology Lab, Inc.*, 688 F.3d 928, 931 n.3 (8th Cir. 2012) (Explaining that in reviewing a motion to dismiss a court may examine the complaint and '"matters incorporated by reference or integral to the claim, subject to judicial notice, matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint whose authenticity is unquestioned' without converting the motion into one for summary judgement.")).

### 2. Claim-Splitting Doctrine

Claim-splitting doctrine, also known as duplicative litigation, is a product of federal common law and stems from the Supreme Court's instruction in *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976) to avoid duplicative litigation between federal district courts. *See Perimeter Solutions LP v. Davis*, No. 24-cv-00617, 2024 WL 4103637, at \*4-5 (E.D. Mo. Sept. 6, 2024) (citing *Kezhaya v. City of Belle Plaine, Minn.*, 78 F.4th 1045, 1050 (8th Cir. 2023). In the Eighth Circuit, "[i]t is well established that claim-splitting is discouraged. All claims must be brought together and cannot be parsed out to be heard by different courts." *Sparkman Learning Ctr. v. Arkansas Dep't of Human Servs.*, 775 F.3d 993, 1000 (8th Cir. 2014); *see also Woodards v. Chipotle Mexican Grill, Inc.*, No. 14-cv-4181, 2015 WL 3447438, at \*11 (D. Minn. May 28, 2015) ("[T]he rule against claim-splitting prevents a party from pursuing two distinct lawsuits that assert claims arising out of the same set of operative facts."); *Missouri ex rel. Nixon v. Prudential Health Care Plan, Inc.,* 259 F.3d 949, 954 (8th Cir. 2001) ("Plaintiffs may not pursue multiple federal suits against the same party involving the same controversy at the same time.").

Although related to res judicata, claim-splitting is slightly different in that the defense of claim-splitting is made during the pendency of both related cases, whereas res judicata requires an

entry of final judgment before it applies. *MacIntyre v. Lender Processing Servs., Inc.*, No. 12-1514, 2012 WL 4872678, at *2 (D. Minn. Oct. 15, 2012); *see also Kezhaya*, 78 F.4th at 1150 ("[U]nlike res judicata, which requires entry of a final judgment before it applies, the rule against duplicative litigation permits the dismissal of a duplicative action while the first action remains pending."). That said, "[t]he principals of res judicata illuminate the claim splitting determination." *MacIntyre*, 2012 WL 4872678, at *2. In analyzing whether two actions are duplicative, courts are to consider "whether the parties to the actions are the same and whether the claims arise from the same nucleus of operative fact." *Kezhaya*, 78 F.4th at 1150 (citing *Scholz v. United States*, 18 F.4th 941, 950 (7th Cir. 2021)). Importantly, complete identity between two actions is not required. *Keupers Constr., Inc. v. State Auto Ins. Co.*, No. 15-449, 2015 WL 4247153, at *10 (D. Minn. July 13, 2015); *see also National Indem. Co. v. Transatlantic Reinsurance Co.*, 13 F.Supp.3d 992, 998 (D. Neb. 2014) (internal quotations omitted) ("Complete identity, however, is not required. Rather, the crucial inquiry is one of substantial overlap between the parties and issues being litigated.").

Litigation involving non-identical parties may still be duplicative if "the interests of non-identical parties are aligned or related." *Ritchie Capital Management, LLC v. Jefferies*, 849 F.Supp.2d 881, 889 (D. Minn. 2012); *see also Elbert v. Carter*, 903 F.3d 779, 782-83 (8th Cir. 2018) (citations omitted) (Explaining that the term "privity" has evolved to encompass "various relationships between litigants that would not have come within the traditional definition of that term....[It is] merely a word used to say that the relationship between the one who is a party on the record and another is close enough to include that other within the res judicata.").

Further, "whether two claims are the same for res judicata purposes depends on whether the claims arise out of the same nucleus of operative fact or are based upon the same factual

predicate." *Elbert*, 903 F.3d at 782. "A plaintiff's claims derive from a common nucleus of operative fact if the 'claims are such that he would ordinarily be expected to try them all in one judicial proceeding.'" *OnePoint Sols., LLC v. Borchert*, 486 F.3d 342, 350 (8th Cir. 2007) (quoting *United Mine Workers v. Gibbs*, 383 U.S. 715, 725 (1966). In other words, for claims to be considered the same, neither the claims themselves nor the allegations in support of the claims need to be identical provided they are based on the same events or series of connected events and were available at the time of pleading. *See Ritchie*, 849 F.Supp.2d at 889 (citing *Friez v. First Am. Bank & Trust of Minot,* 324 F.3d 580, 581 (8th Cir. 2003)); *Kezhaya*, 78 F.4th at 1050 (Finding an action containing new claims duplicative because the "claims brought in the second action were available at the outset, and were either brought in the first action or could have been included in the first lawsuit."); *C.H. Robinson*, 695 F.3d at 764 (citation omitted) (Explaining that res judicata encompasses "a prohibition against relitigation of those matters which, not only, were litigated but, also, of those which *could* have been litigated."). To summarize, even if a parallel action expands on the allegations of the original, includes different legal theories, and adds a handful of parties, it is still considered duplicative if the claims are based on the same nucleus of operative fact and the interests of the non-identical parties are aligned or related. *See Leftwich v. County of Dakota*, No. 18-114, No. 19-393, 2019 WL 13241669, at *3 (D. Minn. May 29, 2019).

Once it is established that litigation is duplicative, a court must next determine whether to dismiss the duplicative litigation by analyzing several equitable factors. *See Ritchie*, 849 F.Supp.2d at 890-91 (quoting *Brewer v. Swinson,* 837 F.2d 802, 804 (8th Cir.1988) ("In deciding whether to dismiss duplicative litigation, 'the determining factors should be equitable in nature, giving regard to wise judicial administration.'"). The relevant equitable factors include: (1) the conservation of judicial resources, (2) the comprehensive disposition of litigation, (3) the relative

progress of the two actions, (4) whether a suit is filed for vexatious, reactive or tactical purpose, and (5) whether the forum in which the first case was filed adequately protects the rights of the litigants in the second case. *Ritchie*, 849 F.Supp.2d at 890-91 (internal citations omitted). The above equitable factors are "'to be applied in a pragmatic, flexible manner with a view to the realities of the case at hand.'" *Id.* (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 21–22, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983)).

### B. Analysis

#### 1. Identity of the Claims

Unmistakably, the lawsuits in *Retsel I* and *Retsel II* rely on essentially the same set of facts with a few minor exceptions. Perhaps recognizing the same, Plaintiffs, in their reply brief, argue that *Retsel I* is strictly limited to events spanning from March of 2020 to April of 2022, whereas *Retsel II* concerns events occurring in 2024. (*Retsel II*, Doc. 45 PgID 546). In doing so, Plaintiffs effectively abandon their claims as pleaded, instead focusing on two allegations from 2024 as the basis for all five Counts against the Native American Defendants. (*Retsel II*, Doc. 45 PgID 557-61) (Pointing to Nick Tilsen's podcast appearance and Brandon Ferguson's allegedly fraudulent EEOC complaint as the factual basis for Counts I through V.). Plaintiffs' attempt to distinguish and temporally confine *Retsel I* and *Retsel II* is unavailing. The Court will discuss each Count in turn.

##### a. Count I Intentional Interference with Business Relations

Count I in the amended complaint is a claim for intentional interference with business relations. (*Retsel II*, Doc. 23). Retsel and Nick Uhre brought this claim as a counterclaim in *Retsel I*. In *Retsel I*, they alleged that NDN Collective, through its members, harmed Retsel's business relationships and expectancies by encouraging its members to make statements on social media

14

regarding the Grand Gateway Hotel's alleged policy towards Native Americans, protesting outside of the hotel, and by persuading the Rapid City Marshals Football team to cancel its contact with the hotel. (*Retsel I*, Doc. 128 PgID 1739). Following extensive discovery and granting Retsel leave to amend its counterclaims (filed on May 1, 2024), the Court granted NDN Collective's motion for summary judgment on this claim finding that Retsel failed to identify a third party and failed to establish any improper conduct on the part of NDN Collective. (*Retsel I*, Doc. 212 at PgID 5568-71).

Count I of *Retsel II* alleges that NDN Collective, through its members, intentionally harmed Retsel's business relationships with Expedia, Booking Holdings, and with guests that book reservations through said platforms by posting statements on social media regarding the Grand Gateway Hotel's alleged policy towards Native Americans, protesting outside of the hotel, and filing a civil rights lawsuit. (*Retsel II*, Doc. 23 PgID 172). This is clearly a recitation of the conduct alleged in support of this claim in *Retsel I*. The only difference is the mention of Expedia and Booking Holdings, seemingly in an attempt to properly identify a third party. This slight modification, however, does not change the fact that this claim is based on the same nucleus of operative fact and seeks the same relief—holding NDN Collective liable for the alleged continuing injury to Retsel's business.

The only new fact alleged in *Retsel II* in support of Count I is that on February 15, 2024, Brandon Ferguson—a non-party to either *Retsel I* or *Retsel II*—filed a charge with the EEOC against Retsel for employment discrimination. (Doc. 23 PgID 171). That same day, Booking Holdings emailed Nick Uhre to inform him that it was removing the Grand Gateway Hotel from its platform because it detected that the Grand Gateway Hotel was "discriminating against guests based on their Race/Ethnicity." (*Id.*; Doc. 23-5, Booking Holdings Email). Plaintiffs allege that

Mr. Ferguson is a suspected member of NDN Collective and that his EEOC complaint caused Booking Holdings to delist the Grand Gateway Hotel. (*Id.* PgID 173). Putting aside the merits and causal issues presented by this allegation, this allegation is could have been pleaded in *Retsel I*.

The alleged events occurred in February of 2024. On April 30, 2024, the Court granted Retsel and Nick Uhre leave to amend their counterclaims providing them the opportunity to add any new legal theories or allegations that may have arisen from the time they initially filed their counterclaims. (*Retsel I*, Doc. 127). Further, in their amended counterclaims, filed on May 1, 2024, Retsel and Nick complain of ongoing and continuing injury from NDN Collective and its members. (*Retsel I*, Doc. 128 PgID 1739, 1742, 1743, 1744). Thus, the amended counterclaim of intentional interference encompasses this allegation and to the extent that Plaintiffs argue *Retsel II* contains temporally distinct factual allegations, the Court disagrees.

Plaintiffs brought this claim in *Retsel I*, and after substantial discovery on the matter and an opportunity to amend their pleadings, this claim failed to survive summary judgment. Plaintiffs cannot now use *Retsel II* to take another bite at the apple by simply adding allegations which could have been included in *Retsel I*. *See Scholz*, 18 F.4th at 951-52 (quotation omitted) (Plaintiffs are "obliged to raise all claims that stem from the same transaction or series of related transactions." "[And] cannot use a second lawsuit…to take another bite at the apple."). The Court finds that Count I is duplicative as it asserts the same legal theory, relies on the same nucleus of operative fact, and seeks the same relief as the previously dismissed counterclaim for intentional interference with business relations.

### b. Count II-Injurious Falsehood

In Count II of the amended complaint, Plaintiffs allege that members of NDN Collective made false statements on social media intended to harm the pecuniary interest of Retsel. (*Retsel II*, Doc. 23 PgID 174-75). While injurious falsehood is a new legal theory, it duplicates the counterclaims in *Retsel I* for intentional interference with business relations and defamation. (*Compare Retsel I*, Doc. 128 PgID 1739-40; *with Retsel II*, Doc. 23 PgID 174-75). As just stated above, in support of Retsel and Nick Uhre's counterclaim for interference with business relations, they allege that NDN Collective encouraged its members to make false and defamatory statements on social media. They also plead this allegation in support of their defamation counterclaim. (*Retsel I*, Doc. 128 PgID 1739-40). A plaintiff cannot circumvent the rule against claim splitting by simply changing the legal theory of a suit arising from the same allegations as a previous suit. *Scholz*, 18 F.4th at 951 ("When a plaintiff brings…a suit, arising from the same transaction or events underlying a previous suit, simply by a change of legal theory, claim splitting has occurred, and the suit cannot be maintained."). Moreover, Count II again seeks the same relief as the counterclaims in *Retsel I*, compensation from NDN Collective for the alleged harm caused by the often-referenced social media posts. Plaintiffs, in their reply brief, again abandon their claim as pleaded and point to the allegedly "fraudulent" EEOC claim as the "new" basis for Count II. (Doc. 45 PgID 558). This is insufficient. The Court found above that the amended complaint in *Retsel I* encompasses this allegation, and that Plaintiffs could have alleged it in *Retsel I*. Accordingly, the Court finds that Count II is duplicative as it relies on the same operative facts as *Retsel I* and seeks the same relief.

### c.  Count III-Defamation

Count III of the amended complaint is a claim for defamation. Retsel and Nick Uhre brought defamation as a counterclaim in *Retsel I*, relying on the allegedly false and defamatory

17

social media posts. (*Retsel I*, Doc. 128, PgID 1739-40). This counterclaim is still pending and is ready for trial in *Retsel I*. Here, in support of Count III, Plaintiffs allege that Sunny Red Bear passed out flyers at the Rapid City Marshals football team practice containing false and defamatory information. (*Retsel II*, Doc. 23 PgID 175). This is the exact same conduct alleged in *Retsel I* in support of the counterclaim for intentional interference with business relations. (*Compare Retsel I*, Doc. 128, PgID 1739; *with Retsel II*, Doc. 23 PgID 175).

As in Counts I and II, Plaintiffs attempt to use their reply brief to reframe their pleadings by arguing that Nick Tilsen's podcast appearance on January 4, 2024, is the basis of their defamation claim and thus does not arise from the same operative facts as *Retsel I*. (Doc. 45 PgID 558-59). While it is true that this allegation was not pleaded in *Retsel I*, just as the Court concluded that the EEOC complaint is subsumed in and could have been alleged in *Retsel I*, the same goes for the allegations concerning the podcast. Retsel and Nick Uhre amended their counterclaims on May 1, 2024, in which they asserted a claim for defamation based on the social media posts of alleged NDN Collective members. Nick Tilsen's statements on the podcast concern the same subject matter and largely reiterated the same allegations made in the social media posts. At the time the amended complaint was filed, Retsel and Nick Uhre could have included this claim. Once again, they chose not to, and there is no good reason why Plaintiffs should have a third chance to bolster their defamation claim by using a second lawsuit. The Court, therefore, finds that Count III is duplicative as it asserts the same legal theory, relies on the same nucleus of operative fact, and seeks the same relief as *Retsel I*.

### d. Count IV-Forgery

Count IV of the amended complaint is a claim for forgery. Putting aside the issue of whether forgery is a civil cause of action in South Dakota, Count IV relies on the same allegations

Retsel and Nick Uhre relied on for their defamation counterclaim in *Retsel I*. Both claims revolve around the allegation that Mr. Ferguson altered an email to incorrectly attribute statements to Nick Uhre when they were actually made by Connie Uhre and posted it to social media. (*Compare Retsel I*, Doc. 128 PgID 1739-40; *with Retsel II*, Doc. 23 PgID 176-77). Once again, Plaintiffs attempt to recast and attenuate their amended complaint by claiming that the allegedly "fraudulent" EEOC filing warrants the charge. (*Retsel II*, Doc. 45 PgID 559). As the Court has stated, that allegation is encompassed in the amended complaint and could have been pleaded in *Retsel I*. The Court finds that Count IV is duplicative as it relies on the same operative facts, and seeks the same relief as *Retsel I*.

### e. Count V-Civil RICO Conspiracy

Count V of the amended complaint is a claim for Civil RICO conspiracy. This claim clearly combines all the allegations against NDN Collective in *Retsel I* and restates them under a new legal theory. Plaintiffs allege that starting in March of 2022 (after Connie Uhre's Facebook post), Defendants have acted in concert to generally harm Plaintiffs' business. (*Id.* at PgID 178). Plaintiffs point to the allegedly false and defamatory social media posts, Hermus Bettelyoun's allegedly altered email, the Native American Defendants documenting their attempts to rent rooms at the Grand Gateway Hotel, the protests and boycott of the Grand Gateway Hotel, and the allegations of trespass and nuisance. (*Id.* PgID 178-80). This claim then plainly relies on the same nucleus of operative facts as *Retsel I* and seeks the same relief. One final time, Plaintiffs' attempt to salvage this claim by arguing, in their reply brief, that the allegedly "fraudulent" EEOC complaint is a sufficient basis to maintain this claim. (*Retsel II*, Doc. 45 PgID 560-61). Again, that argument fails. The Court finds that Count V relies on the same nucleus of operative fact, and seeks the same relief as *Retsel I*.

19

In sum, even though *Retsel II* expands on the allegations of *Retsel I*, includes different legal theories, and adds a handful of Defendants, there can be little doubt that both cases arise from a common nucleus of operative fact: NDN Collective and its claimed members' alleged conduct following Connie Uhre's racially charged statements, and the Grand Gateway Hotel's alleged discriminatory policy towards Native Americans. Further, both actions seek the same relief: to hold NDN Collective liable for the alleged ongoing and continuing injury to Plaintiffs' business. Accordingly, for purposes of the claim-splitting analysis, the Court finds that Plaintiffs' claims against the Native American Defendants in *Retsel II* are duplicative of Retsel's and Nick Uhre's counterclaims in *Retsel I*.

### 2. Identity of the Parties

The Native American Defendants concede that the parties to *Retsel I* and *Retsel II* are not identical, however, they argue that the parties are the "same" for claim-splitting purposes because the non-identical parties' interests are aligned or related. Instead of responding to the substance of the Native American Defendants' argument, Plaintiffs argue that the parties to *Retsel I* and *Retsel II* are not the same because *Retsel II* includes third-party travel sites (Expedia[2] and Booking Holdings) and a local police department (Rapid City Police Department). (*Retsel II*, Doc. 45 PgID 541). However, Plaintiffs' inclusion of the third-party travel sites and local police department is irrelevant to the present motion. The Native American Defendants moved to dismiss only Counts I through V and those claims are brought against the Native American Defendants alone. The only claim against the third-party travel sites is Count VI and the only claim against the police department is Count VII, both of which are not of consequence to the current motion before the Court.

---

[2] The claim against Defendant Expedia has been severed from the current action and transferred to the Western District of Washington pursuant to a forum selection clause. (*See Retsel II*, Doc. 49).

In *Retsel I*, Retsel and Nick Uhre asserted counterclaims against NDN Collective. In *Retsel II*, Nick Uhre, Connie Uhre and Retsel assert claims against NDN Collective, Sunny Red Bear, Bre Jackson, Alberta Eagle, Mary Bowman, Nick Cottier, George Bettelyoun, and Nick Tilsen. The Native American Defendants argue that Connie Uhre is in privity with Retsel and Nick Uhre. Ms. Uhre is Nick Uhre's mother and, at one point, operated the Grand Gateway Hotel and Cheers Sports Lounge. Further, she does not complain of any individual injury. Her complaints are limited to generalized statements the entire family has been the victim of threats, vandalism, harassment, and defamation. Plaintiffs in *Retsel II* do not argue otherwise. Thus, the Court finds Connie Uhre's interests are aligned and related to Nick Uhre and Retsel and their relationship is so close that her addition cannot change the fact that this present action is repetitious. *See Elbert*, 903 F.3d 779, 782-83; *Ritchie*, 849 F.Supp.2d at 889.

There are also non-identical defendants. NDN Collective is the sole counterclaim Defendant in *Retsel I*, however, the Native American Defendants argue that all the non-identical Defendants' interests are aligned or related. The Court agrees. The amended complaint repeatedly alleges that all the individually named Defendants are members of NDN Collective and acted on behalf of the organization. (Doc. 23 PgID 166, 169, 170, 171, 172, 174, 177-80). Indeed, it is their alleged conduct and relationship with NDN Collective that forms the basis of the counterclaims in *Retsel I* and claims *Retsel II*. Again, Plaintiffs in *Retsel II* do not argue to the contrary. The Court agrees with the Native American Defendants and likewise finds that the non-identical defendants' interests are aligned and related such that their inclusion does not cure the present action's duplicative nature. Accordingly, for purposes of the claim splitting analysis, the parties to *Retsel II* are the same as the parties to *Retsel I*.

21

Therefore, *Retsel II* violates the rule against claim splitting, as the Court found above that the claims arise from the same nucleus of operative fact. *See Kezhaya*, 78 F.4th at 1150 (citing *Scholz*, 18 F.4th at 950) (Explaining that an action is duplicative when the parties to the actions are the same and when the claims arise from the same nucleus of operative fact.).

### 3. Equitable Considerations

Now that the Court has established that *Retsel II* is duplicative of *Retsel I*, the Court must determine whether to dismiss the duplicative litigation by analyzing several equitable factors. *See Ritchie*, 849 F.Supp.2d at 890-91. The Native American Defendants argue that all five factors weigh heavily in favor of dismissal. Plaintiffs only address the first, second, and fourth factors, and ultimately fail to rebut the Native American Defendants' arguments.

#### a.    Conservation of Judicial Resources

Dismissing the duplicative action will save judicial resources by avoiding having the Court examine the same facts to resolve the same issues, under the guise of new legal theories. Significant judicial resources have already been expended in *Retsel I*. Throughout more than three years of litigation, the Court has held several hearings, decided five discovery motions, a motion to dismiss, dueling motions for summary judgment, several motions for reconsideration, a motion for certificate of appealability, over twenty motions in limine, and engaged in other trial preparation, including drafting jury instructions. Further, the case that will remain in *Retsel II* is a far simpler case still subject to discovery and motions practice among fewer parties. Plaintiffs' lone argument against this factor is that *Retsel II* is not duplicative. (*Retsel II*, Doc. 45 PgID 564). Plaintiffs are unpersuasive. The Court finds that the conservation of judicial resources factor weighs heavily in favor of dismissal.

#### b.    Comprehensive Disposition of Litigation

22

In *Retsel I*, the Court has allowed the parties to comprehensively bring forward all claims arising out of the events at the Grand Gateway Hotel in June of 2020, March of 2022, the boycott and protests that followed, and other alleged conduct by claimed members of NDN Collective. Also, as outlined above in the first factor, the parties have comprehensively litigated *Retsel I*. Plaintiffs' only argument to the contrary is that *Retsel I* cannot provide redress for the alleged conduct occurring in January and February of 2024. (*Retsel II*, Doc. 45 PgID 564-65). That argument fails. First, the amended counterclaims complain of ongoing and continuing injury, thus encompassing said allegations. Second, both lawsuits seek the same redress, holding NDN Collective liable for the alleged harm it caused to Plaintiffs' business. Finally, the Court granted Retsel and Nick Uhre leave to amend their counterclaims on April 30, 2024, giving them the opportunity to add any new legal theories or allegations that may have arisen from the time it initially filed its counterclaims. (*Retsel I*, Doc. 127). The Court finds that the second factor weighs in favor in dismissal.

### c.    Relative Progress

Consideration of the third factor requires little analysis. *Retsel I* began in March of 2022, and trial was set to commence on September 9, 2024. That trial date was postponed after Retsel filed bankruptcy on September 7, 2024. Following resolution of the bankruptcy petition, trial was scheduled to commence on June 2, 2025. That trial date has since been continued following another motion to continue by Retsel. A new trial date in *Retsel I* has not yet been set, however, it remains ready to be tried. *Retsel II*, on the other hand, is still in the pleading stage. The Court finds that the third factor weighs heavily in favor of dismissal.

### d.    Vexatious, Reactive, or Tactical Purpose

The timing *Retsel II* was filed, the nature of the allegations, and the Defendants it names suggests that it was filed for vexatious, reactive, or tactical purposes. On August 22, 2024, the Court in *Retsel I* granted NDN Collective's motion for summary judgment on three of Retsel's and Nick Uhre's counterclaims. (*Retsel I*, Doc. 212). On August 25, 2024, Retsel moved for a certificate of appealability regarding the Court's summary judgment orders. (*Retsel I*, Doc. 219). That motion was denied on August 29, 2024. (*Retsel I*, Doc. 229). Despite denying Retsel's motion to certify, on August 30, 2024, Retsel filed an interlocutory appeal of the Court's summary judgment decisions. *NDN Collective et al*, No. 24-2788. That same day, Retsel also filed a writ of mandamus seeking to have the Eighth Circuit mandate that the district court reverse its summary judgment decisions. *In re Retsel Corp.*, No. 24-2783. On September 5, 2024, the Eighth Circuit Court of Appeals denied Retsel's interlocutory appeal and its writ of mandamus. *See NDN Collective et al*, No. 24-2788; *In re Retsel Corp.*, No. 24-2783. One day later, on September 6, 2024, Retsel, Nick Uhre, and Connie Uhre filed *Retsel II* effectively realleging the same facts and the same claims in an attempt to relitigate the claims they had just lost. (*Retsel II*, Doc. 1). This sequence of events suggests, at the least, that Retsel, Nick Uhre, and Connie Uhre are seeking to obtain a more favorable ruling on the same issues.

The Native American Defendants further argue that Plaintiffs are using *Retsel II* to recast factual narratives to bolster issues and claims they previously lost and subject the Native American Defendants—all of whom are plaintiffs in *Retsel I* with the exception of Nick Tilsen—to another round of discovery. Again, Plaintiffs do not respond to the substance of this argument. Plaintiffs' only rebuttal is that this action is not vexatious because they have been harmed by new action. (*Retsel II*, Doc. 45 PgID 564-65). The Court disagrees and finds that the fourth factor weighs in favor of dismissal.

### e.    Adequacy of Forum to Protect Litigants' Rights

*Retsel I* was filed in the Western Division for the District of South Dakota. Plaintiffs chose

the same forum for *Retsel II*. As described at length, Plaintiffs have had a full and fair opportunity

to bring all the claims they had against the Native American Defendants in *Retsel I*. The forum

adequately protects the litigants' rights, thus there is no need for the duplicative action to proceed.

The Court finds that the fifth factor weighs in favor of dismissal.

In short, the Court finds that the identity of the claims and parties, and the desire to promote

judicial economy and to protect the parties from duplicative litigation over the same subject matter,

together warrant the dismissal of Plaintiffs' claims against the Native American Defendants.

### 4. Dismissal of the Claims Against the Native American Defendants

One final matter requires the Court's attention. The Native American Defendants are

seeking to have Plaintiffs' claims against them dismissed with prejudice. (*Retsel II*, Doc. 36).

When a party seeks dismissal of claims with prejudice on claim-splitting grounds, "the [c]ourt

should analyze whether res judicata would preclude the claims in the second suit." *MacIntyre*,

2012 WL 4872678, at \*2 (citing *Brown–Wilbert, Inc. v. Copeland Buhl & Co.,* 732 N.W.2d 209,

223 (Minn.2007)) ("We have not found any cases that have approved a dismissal with prejudice

of an action based on a defense of claim splitting where res judicata would not also apply.").

As briefly mentioned above, the claim splitting analysis is similar to the res judicata

analysis. *See In re RFC*, 2017 WL 3129748, at \*6 (explaining that in considering a claim splitting

defense the "[p]rinciples of res judicata apply, except the requirement of a final judgment"). Even

though the Court has found that *Retsel II* is duplicative, *Retsel I* has not yet been resolved by a

final judgment. Ordinarily, "'summary judgment is a final judgment on the merits for purposes of

res judicata.'" *Anderson v. City of St. Paul, Minn.*, 849 F.3d 773, 779 (8th Cir. 2017) (quoting

*Dicken v. Ashcroft*, 972 F.2d 231, 233 n.5 (8th Cir. 1992)).  However, partial summary judgment only "becomes a final judgment once the remaining parts of the case are dismissed or otherwise resolved." *Porter v. Williams*, 436 F.3d 917, 920 (8th Cir. 2006) (citing *Chrysler Motors Corp. v. Thomas Auto Co.*, 939 F.2d 538, 540 (8th Cir.1991)).  In *Retsel I*, the Court granted only partial summary judgment against Retsel and Nick Uhre, thus there are still claims that must be resolved before the judgment is considered final.  Accordingly, Plaintiffs' claims against the Native American Defendants are to be dismissed without prejudice.

## III.    CONCLUSION

For the reasons stated above, IT IS HEREBY ORDERED:

1. That the Native American Defendants' Motion to Dismiss Counts I, II, III, IV, and V of the Amended Complaint, Doc. 36, is granted;

2. That Counts I, II, III, IV, and V are dismissed without prejudice; and

3. Defendants NDN Collective, Sunny Red Bear, Nick Tilsen, Mary Bowman, Nick Cottier, Alberta Eagle, Bre Jackson, and George Bettelyoun are dismissed as parties to this action.

Dated this 30 day of June, 2025.

BY THE COURT

Lawrence L. Piersol
United States District Judge

26